E-FILED
Wednesday, 25 August, 2021  03:51:46 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

_____

NIKE USA, INC.,                              :
                                             :
              Plaintiff,                     :        Civ. No.
                                             :
v.                                           :
                                             :
FIRST TO THE FINISH REAL                     :
ESTATE LLC; KIM M. VIANO and                 :
MICHAEL J. VIANO doing business as           :
FIRST TO THE FINISH INC.; KIM M.             :
VIANO and MICHAEL J. VIANO doing             :
business as FIRST TO THE FINISH LLC;         :
KIM M. VIANO; MICHAEL J. VIANO               :
also known as MIKE VIANO,                    :
                                             :
              Defendants.                    :
_____             :

### COMPLAINT OF NIKE USA, INC. FOR: (I) BREACH OF CONTRACT, (II) INDEMNIFICATION, AND, IN THE ALTERNATIVE, (III) UNJUST ENRICHMENT

Plaintiff Nike USA, Inc. ("Nike") sues for breach of contract, indemnification, and, in the alternative, unjust enrichment, the following defendants: (1) First to the Finish Real Estate LLC; (2) Kim M. Viano and Michael J. Viano doing business as First to the Finish Inc.; (3) Kim M. Viano and Michael J. Viano doing business as First to the Finish LLC; (4) Kim M. Viano; and (5) Michael J. Viano also known as Mike Viano (collectively these defendants are referred to herein as, the "Defendants").  In support of this Complaint, Nike states as follows:

### I.       SUMMARY OF ACTION

1.       The following defendants are directly liable to Nike for breach of a note and security agreement in favor of Nike in the amount of $971,187.23, plus interest, fees, and costs:

a.       First to the Finish Real Estate LLC;

      b.     Kim M. Viano and Michael J. Viano doing business as First to the Finish Inc.; and

      c.     Kim M. Viano and Michael J. Viano doing business as First to the Finish LLC.

2.     All of the Defendants have guaranteed to Nike payment of the indebtedness of a company that has filed for bankruptcy: First to the Finish Kim and Mike Viano Sports Inc.  Nike required guaranties from the Defendants in doing business with the now-bankrupt company.  Nike relied on the Defendants' guaranties in determining to provide product, extend credit, and negotiate forbearance agreements with the now-bankrupt company.  The now-bankrupt company ordered and received goods from Nike and failed to pay for those goods.  The Defendants have breached their guaranties to Nike by failing to perform pursuant to the guaranties.  Accordingly, Nike seeks damages from the Defendants, including interest, fees, and costs, for breach of contract.

3.     All Defendants are liable to Nike because they indemnified the obligations of the other Defendants and the now-bankruptcy company to Nike.

4.     Finally, in the alternative, the Defendants are liable to Nike for unjust enrichment. In doing business with Nike, the Defendants received goods from Nike that unjustly enriched the Defendants.  The Defendants were unjustly enriched because they failed to pay for the goods received from Nike.

## II.    THE PARTIES

5.     Plaintiff Nike USA, Inc., is an Oregon corporation whose principal business activity is the design, development, and marketing and selling of athletic footwear, apparel, equipment, accessories, and services.

6.     Nike USA, Inc. is organized, domiciled in, and a citizen of Beaverton, Oregon.

7.      According to the Illinois Office of the Secretary of State, First to the Finish Real Estate LLC's principal executive office is located at 1325 North Broad Street, Carlinville, Illinois 62626.

8.      First to the Finish Real Estate LLC's principal executive office is located at 1325 North Broad Street, Carlinville, Illinois 62626.

9.      First to the Finish Real Estate LLC is organized, domiciled in, and a citizen of Macoupin County, Illinois.

10.      According to the Illinois Secretary of State, Michael J. Viano is the Manager and registered agent of First to the Finish Real Estate LLC.

11.      Michael J. Viano is the managing member of First to the Finish Real Estate LLC.

12.      Defendant Kim M. Viano is an individual domiciled in, residing at, and a citizen of 43 Pheasant Lane in Carlinville, Macoupin County, Illinois 62626.

13.      Defendant Michael J. Viano is an individual domiciled in, residing at, and a citizen of 43 Pheasant Lane in Carlinville, Maucopin County, Illinois 62626.

14.      Michael J. Viano is also known as Mike Viano.

15.      Kim M. Viano and Michael J. Viano conduct business as First to the Finish Inc., a non-extent entity.

16.      First to the Finish Inc. is not registered to do business anywhere in the United States.

17.      Kim M. Viano and Michael J. Viano conduct business as First to the Finish LLC.

18.      First to the Finish LLC is not an Illinois limited liability company.

19.      Upon information and belief, First to the Finish LLC is not a registered limited liability company anywhere in the United States.

## II.  JURISDICTION AND VENUE

20.     This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because Nike is a citizen of a different state than all of the Defendants, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

21.     Venue is proper in this District and Division pursuant to 28 U.S.C. §1391(b)(1) because all of the Defendants reside in, are domiciled in, and are citizens of Maucopin County, Illinois.

## III.     BACKGROUND FACTS

### A.  The Note and Security Agreement

22.     Nike, First to the Finish Kim and Mike Viano Sports Inc. (the "Bankrupt Company"), First to the Finish Inc., First to the Finish LLC, and First to the Finish Real Estate LLC ("Real Estate") are parties to Nike USA, Inc. Secured Promissory Note dated January 8, 2020 for the original principal amount of $971,187.23 (the "Note") and the accompanying Nike USA, Inc. Security Agreement (the "Security Agreement") dated January 8, 2020.  Copies of the Note and Security Agreement are attached hereto as **Exhibits A and B**, respectively, and are incorporated herein by reference.

23.     Nike included First to the Finish Inc. and First to the Finish LLC in the Note and Security Agreement, despite being unable to verify the legal existence of First to the Finish Inc. or First to the Finish LLC, out of an abundance of caution, because of prior documentation submitted to Nike by Mike Viano.  *See, e.g.,* Schedule A to Exhibit A attached hereto.

24.     The Bankrupt Company is not included as a defendant in this action.  Nike seeks no relief or recovery from the Bankrupt Company in this Complaint or action because the Bankrupt Company filed a voluntary petition for bankruptcy relief under chapter 11 of title 11 of

4

the United States Code in the United States Bankruptcy Court for the Southern District of Illinois.  The Bankrupt Company's case is assigned number 20-30955 (LKG) and remains pending.

25.     Nike takes no position on whether the Bankrupt Company does business as First to the Finish Inc. or First to the Finish LLC.  Should the Court determine that the Bankrupt Company does business as First to the Finish Inc. or First to the Finish LLC, Nike is not seeking relief or recovery from the Bankrupt Company in this Complaint or Action.

26.     Michael J. Viano executed the Note and Security Agreement on behalf of the Bankrupt Company, First to the Finish Inc., First to the Finish LLC, and Real Estate (collectively, the "Customer") as authorized signatory.

27.     In the Note and Security Agreement, Customer acknowledges that as of January 8, 2020, Customer owes Nike an outstanding balance of $971,187.23 for goods and services Nike provided to Customer.

28.     In the Note and Security Agreement, Customer promises to pay Nike $971,187.23.

29.     In the Note and Security Agreement, Customer agrees to pay Nike pursuant to the payment schedule attached to the Note as Schedule B.

30.     The Note has a maturity date of April 3, 2020.

31.     The Security Agreement grants Nike a security interest in substantially all of the Customers' assets.

32.     Specifically, the Security Agreement provides as follows:

> Customer hereby pledges and grants to Nike, and hereby creates, a continuing, unequivocal, and enduring lien and security interest in favor of Nike in and to all of the Customer's right, title and interest in and to all fixtures and personal property of every kind and

nature, wherever located, whether now existing or hereafter from time to time arising or acquired (collectively, the "Collateral"). The Collateral shall include, without limitation, all: (i) accounts (including accounts receivable, deposit accounts, and all cash held or controlled by the Customer); (ii) goods (including inventory, equipment, furniture and/or fixtures); (iii) documents (including, if applicable, electronic documents); (iv) instruments; (v) promissory notes; (vi) chattel paper (whether tangible or electronic); (vii) letters of credit, letter-of-credit rights (whether or not the letter of credit is evidenced by a writing); (viii) securities and all other investment property; (ix) general intangibles (including all payment intangibles); (x) money; (xi) commercial tort actions (whether or not such rights are currently extant or asserted); (xii) intellectual property (including all patents, trademarks, copyrights, trade secrets, intellectual property licenses and all other intangible property of any type, including mask works and industrial designs); (xiii) customer lists (or other similar contact lists); and (xiv) any other contract rights or rights to the payment of money. Collateral shall also include the proceeds and products of the Collateral listed above.

Security Agreement at ¶ 2.

33.     The Note and Security Agreement state that Customers' failure to pay Nike pursuant to the Payment Schedule attached to the Note as Schedule B constitutes an event of default of the Note and Security Agreement.

34.     Upon default, the Security Agreement permits Nike to, *inter alia*, accelerate the entire remaining balance due under the Note and charge interest at the default rate.

35.     The Note and Security Agreement provide that the default rate of interest is 10 percent *per annum* compounding monthly until the outstanding balance is paid in full.

36.     The Note and Security Agreement require Customer to pay all costs, collection agency fees, and other expenses that Nike may incur in connection with the collection of past due sums, including reasonable attorney fees.

37.     The Note and Security Agreement are governed by Oregon law.

38.     The outstanding balance under the Note and Security Agreement remains unpaid,

and interest continues to accrue at 10 percent *per annum* compounding monthly.

39.     On January 18, 2020, Nike filed against each Customer a UCC-1 Financing Statement asserting a security interest in all of the Collateral exactly as set forth in the Security Agreement. *See supra.* ¶ 32.

40.     Nike properly perfected its security interest created by the Note and Security Agreement by the filing against each Customer of a UCC-1 Financing Statement with the State of Illinois recorded on January 18, 2020 with Filing Number 25133641.  A copy of the UCC-1 Financing Statement is attached hereto as **Exhibit C** and is incorporated herein by reference.

41.     The Customer defaulted on the Note and Security Agreement on February 7, 2020 by failing to make the payment due.

42.     On July 31, 2020, Nike and the Customer entered into the Nike USA, Inc. Forbearance Agreement (the "Forbearance Agreement"), which, *inter alia*: (i) acknowledges Nike's properly perfected security interest in the Collateral; (ii) extends the maturity date of the Note and Security Agreement to December 30, 2020; and (iii) temporarily forbears on certain rights and remedies of Nike in the Note and Security Agreement, subject to the terms and conditions of the Forbearance Agreement.  A copy of the Forbearance Agreement is attached hereto as **Exhibit D** and is incorporated herein by reference.

43.     The Customer defaulted on the Forbearance Agreement on September 15, 2020 by failing to make the payment due.

44.     Pursuant to the Forbearance Agreement, a default on the Forbearance Agreement entitles Nike to exercise all rights and remedies set forth in the Note and Security Agreement.

**B. The Personal Guaranties**

45.     On November 29, 2019, Michael J. Viano provided Nike USA, Inc. with the Nike Personal Guaranty dated November 12, 2019 (the "2019 MJV Personal Guaranty").  A copy of the 2019 MJV Personal Guaranty is attached hereto as **Exhibit E** and is incorporated herein by reference.

46.     In the 2019 MJV Personal Guaranty, Michael J. Viano personally guarantees the debts of the Customer to Nike USA, Inc. and all of its affiliates.

47.     On November 29, 2019, Kim M. Viano provided Nike USA, Inc. with the Nike Personal Guaranty dated November 12, 2019 (the "2019 KMV Personal Guaranty," with the 2019 MJV Personal Guaranty, the "Personal Guaranties").  A copy of the 2019 KMV Personal Guaranty is attached hereto as **Exhibit F** and is incorporated herein by reference.

48.     In the 2019 KMV Personal Guaranty, Kim M. Viano personally guarantees the debts of the Customer to Nike USA, Inc. and all of its affiliates.

49.     The Personal Guaranties are absolute, unconditional, and irrevocable.

50.     In each of the Personal Guaranties, Michael J. Viano and Kim M. Viano (collectively, the "Personal Guarantors") absolutely and unconditionally guarantee payment to Nike of all indebtedness of the Customer.

51.     The Personal Guaranties allow Nike to recover from the Personal Guarantors, in addition to the sums owed by the Customer, principal, interest, additional charges and expenses, and attorneys' fees.

52.     Paragraph 5 of the Personal Guaranties provides that "Guarantor agrees to indemnify Nike and hold Nike harmless from all obligations, demands, claims, and liabilities asserted by any

other party, and against all losses incurred or paid by Nike in any way arising out of or in connection with Nike's transactions with Customer or Guarantor."

53.    The Personal Guaranties remain in effect until the respective Personal Guarantors provide written notice by certified mail of the termination of the Guaranties.

54.    Termination of the Personal Guaranties does not affect the liability of the Personal Guarantors for any obligations then due or which thereafter become due and payable.

55.    The Personal Guarantors have not terminated the Personal Guaranties.

56.    The Personal Guarantors have waived all objections and defenses to the Personal Guaranties.

57.    The Personal Guaranties are governed by Oregon law.

58.    Kim M. Viano personally guaranteed to Nike payment of the Customers' debts.

59.    Michael J. Viano personally guaranteed payment to Nike of the debts of Customer.

60.    Nike relied on, *inter alia*, the Personal Guaranties and prior personal guaranties provided by Kim M. Viano and Michael J. Viano during the course of at least 26 years in making decisions to extend credit to, do business with, and forebear collections efforts against Customer.

**C.  The Cross Corporate Guaranties**

61.    On December 16, 2019, each Customer executed the Corporate Guaranty dated December 13, 2019 (the "2019 Corporate Guaranty").  The Corporate Guaranty is attached hereto as **Exhibit G** and incorporated herein by reference.

62.    On January 9, 2020, each Customer executed the Corporate Guaranty dated January 8, 2020 (the "2020 Corporate Guaranty," with the 2019 Corporate Guaranty, the

"Corporate Guaranties").  The 2020 Corporate Guaranty is attached hereto as **Exhibit H** and is incorporated herein by reference**.**

63.     Michael J. Viano executed the Corporate Guaranties on behalf of each Customer as authorized signatory.

64.     In the Corporate Guaranties, each Customer unconditionally, absolutely, and irrevocably guaranteed to pay to Nike when due all payments and indebtedness owed by every other Customer to Nike.

65.     Each Customer is defined as a "Guarantor" in the Corporate Guaranties.

66.     In the Corporate Guaranties, the term "indebtedness" is used in its most comprehensive sense and includes "all of the Current Outstanding Balance owed or to be owed by Guarantors to Nike, all future indebtedness that will be owed by Guarantors to Nike, and all of Guarantors' obligations to Nike pursuant to any customer agreements, applications, invoices, and documentation governing Nike and Guarantors' relationship."

67.     In the Corporate Guaranties, the Current Outstanding Balance is $971,187.23.

68.     In the Corporate Guaranties, each Customer absolutely, irrevocably, and unconditionally guarantees to pay Nike the indebtedness owed to Nike by every other Customer.

69.     The Corporate Guaranties are absolute, unconditional, and irrevocable.

70.     The Corporate Guaranties allow Nike to recover from every Customer, in addition to the sums owed by every Customer, principal, interest, additional charges and expenses, and attorneys' fees.

71.     Customer waived all objections and defenses to the Corporate Guaranties.

72.     The Corporate Guaranties are governed by Oregon law.

73.    The Corporate Guaranties require the Customer to indemnify and hold Nike harmless from all obligations, demands, claims, and liabilities asserted by any other Customer, and against all losses incurred or paid by Nike in any way arising out of or in connection with Nike's transactions with Customer.

74.    The Corporate Guaranties remain in effect until the respective Customer provides written notice by certified mail of the termination of the Corporate Guaranties.

75.    Termination of the Corporate Guaranties does not affect the liability of the Customer for any obligations then due or which thereafter become due and payable.

76.    Customer has not terminated the Corporate Guaranties.

77.    Nike relied on, *inter alia*, the Corporate Guaranties and personal guaranties during the course of at least 26 years in making decisions to extend credit to, do business with, and forebear collections efforts against Customer.

## IV.    COUNT I – BREACH OF CONTRACT (NOTE AND SECURITY AGREEMENT)

Nike USA, Inc. v. First to the Finish Real Estate LLC; Kim M. Viano and Michael J. Viano doing business as First to the Finish Inc.; and Kim M. Viano and Michael J. Viano doing business as First to the Finish LLC

78.    Nike incorporates herein by reference each of the foregoing paragraphs above as if fully restated herein.

79.    The Note and Security Agreement are valid, binding, and enforceable contracts.

80.    The Note and Security Agreement are supported by consideration.

81.    Customers' execution of the Note and Security Agreement provided Customer the ability to reduce the Current Outstanding Balance (as defined in the Note and Security Agreement) over time while allowing the Customer to pay for additional goods and services from Nike and other vendors.

11

82.     The Customers' execution of the Note and Security Agreement permitted Customer to continue doing business with Nike, which provided Customer with heightened brand awareness and allowed Customer to fulfill outstanding orders.

83.     The Customers' execution of the Note and Security Agreement granted Nike a security interest in the Collateral as defined in the Security Agreement.

84.     Nike performed pursuant to the Note and Security Agreement by extending the time within which the Customer was required to pay the Current Outstanding Balance (as defined in the Note and Security Agreement).

85.     Nike performed pursuant to the Note and Security Agreement by continuing to do business with the Customer.

86.     Nike performed pursuant to the Note and Security Agreement by extending credit to the Customer after the Note and Security Agreement were executed.

87.     The Customer breached the Note and Security Agreement by failing to make the payment required on February 7, 2020.

88.     The Customer breached the Note and Security Agreement by failing to pay Nike $971,187.23 by the Maturity Date of April 3, 2020.

89.     Customers' breach caused Nike to suffer damages.

90.     Nike has reconciled the Current Outstanding Balance (as defined in the Note and Security Agreement) with the payments received by Nike from Customer and has calculated interest accruing through August 7, 2021.

91.     Accordingly, First to the Finish Real Estate LLC; Kim M. Viano and Michael J. Viano doing business as First to the Finish Inc.; and Kim M. Viano and Michael J. Viano doing business as First to the Finish LLC are required to pay Nike no less than $960,565.08 plus

interest, costs, collection agency fees, other expenses that Nike may incur in connection with the collection of past due sums, including reasonable attorney fees (whether incurred prior to, at trial, or on appeal).   A copy of the account reconciliation showing outstanding invoices, payments received, and accruing interest is attached hereto as **Exhibit I**.

92.     Interest continues to accrue on the Note and Security Agreement, compounding monthly, at a rate of 10 percent *per annum.*

WHEREFORE, Nike requests that judgment be entered in favor of Nike and against First to the Finish Real Estate LLC; Kim M. Viano and Michael J. Viano doing business as First to the Finish Inc.; and Kim M. Viano and Michael J. Viano doing business as First to the Finish LLC in an amount no less than $960,565.08 plus interest, costs, collection agency fees, expenses, and reasonable attorney fees (whether incurred prior to, at trial, or on appeal).

## V.     COUNT II – JUDGMENT ON NOTE

Nike USA, Inc. v. First to the Finish Real Estate LLC; Kim M. Viano and Michael J. Viano
doing business as First to the Finish Inc.; and Kim M. Viano and Michael J. Viano doing
business as First to the Finish LLC

93.     Nike incorporates herein by reference each of the foregoing paragraphs above as if fully restated herein.

94.     First to the Finish Real Estate LLC; Kim M. Viano and Michael J. Viano doing business as First to the Finish Inc.; and Kim M. Viano and Michael J. Viano doing business as First to the Finish LLC defaulted on the Note and Security Agreement.

95.     First to the Finish Real Estate LLC; Kim M. Viano and Michael J. Viano doing business as First to the Finish Inc.; and Kim M. Viano and Michael J. Viano doing business as First to the Finish LLC are required to pay Nike no less than $960,565.08 plus interest, costs, collection agency fees, other expenses that Nike may incur in connection with the collection of

past due sums, including reasonable attorney fees (whether incurred prior to, at trial, or on appeal).

96.　　Interest continues to accrue on the Note and Security Agreement, compounding monthly, at a rate of 10 percent *per annum.*

WHEREFORE, Nike requests that judgment be entered in favor of Nike and against First to the Finish Real Estate LLC; Kim M. Viano and Michael J. Viano doing business as First to the Finish Inc.; and Kim M. Viano and Michael J. Viano doing business as First to the Finish LLC in an amount no less than $960,565.08 plus interest, costs, collection agency fees, expenses, and reasonable attorney fees (whether incurred prior to, at trial, or on appeal).

## VI.　　COUNT III – BREACH OF CONTRACT (CORPORATE GUARANTIES OF OUTSTANDING AMOUNTS)

Nike USA, Inc. v. First to the Finish Real Estate LLC; Kim M. Viano and Michael J. Viano doing business as First to the Finish Inc.; Kim M. Viano and Michael J. Viano doing business as First to the Finish LLC

97.　　Nike incorporates herein by reference each of the foregoing paragraphs above as if fully restated herein.

98.　　The Corporate Guaranties are binding, valid, and enforceable contracts.

99.　　The Corporate Guaranties are supported by consideration.

100.　　In exchange for the Customers' execution of the Corporate Guaranties, *inter alia,* Nike agreed to do business or to continue to do business with Customer.

101.　　In the Corporate Guaranties, each Customer acknowledges that it benefits from Nike's business relationship with the other Customers.

102.　　Nike provided goods and services to the Customer and continued to do business with the Customer, which was Nike's substantial performance pursuant to the Personal Guaranties.

14

103. Nike invoiced Customer for all amounts outstanding to Nike.

104. Nike has resolved all discrepancies and issues raised by Customer with respect to each invoice issued to the Customer by Nike.

105. Nike has credited Customers' account for any payments received with respect to each invoice issued to Customer by Nike.

106. Nonetheless, Customer has failed to pay Nike for the goods and services Nike has provided to Customer.

107. Customers' failure to pay Nike for the goods and services Nike provided to Customer is a breach of the Corporate Guaranties.

108. Customers' failure to pay Nike for the goods and service Nike provided to Customer has caused Nike to suffer damages.

109. Accordingly, First to the Finish Real Estate LLC; Kim M. Viano and Michael J. Viano doing business as First to the Finish Inc.; and Kim M. Viano and Michael J. Viano doing business as First to the Finish LLC are required to pay Nike no less than $960,565.08 plus interest, all costs, collection agency fees, and other expenses that Nike may incur in connection with the collection of past due sums, including reasonable attorney fees (whether incurred prior to, at trial, or on appeal).  Interest continues to accrue, compounding monthly, at a rate of 10 percent *per annum.*

WHEREFORE, Nike requests that judgment be entered in favor of Nike and against First to the Finish Real Estate LLC; Kim M. Viano and Michael J. Viano doing business as First to the Finish Inc.; and Kim M. Viano and Michael J. Viano doing business as First to the Finish LLC in an amount no less than $960,565.08 plus interest, costs, collection agency fees, expenses, and reasonable attorney fees (whether incurred prior to, at trial, or on appeal).

## VII. COUNT IV – BREACH OF CONTRACT (CORPORATE GUARANTIES OF NOTE AND SECURITY AGREEMENT)

Nike USA, Inc. v. First to the Finish Real Estate LLC; Kim M. Viano and Michael J. Viano doing business as First to the Finish Inc.; Kim M. Viano and Michael J. Viano doing business as First to the Finish LLC

110.    Nike incorporates herein by reference each of the foregoing paragraphs above as if fully restated herein.

111.    Customer has failed to pay Nike pursuant to the Note and Security Agreement.

112.    Customers' failure to pay Nike pursuant to the Note and Security Agreement is a breach of the Corporate Guaranties.

113.    Customers' failure to pay Nike pursuant to the Note and Security Agreement has caused Nike to suffer damages.

114.    Accordingly, First to the Finish Real Estate LLC; Kim M. Viano and Michael J. Viano doing business as First to the Finish Inc.; and Kim M. Viano and Michael J. Viano doing business as First to the Finish LLC are required to pay Nike no less than $960,565.08 plus interest, all costs, collection agency fees, and other expenses that Nike may incur in connection with the collection of past due sums, including reasonable attorney fees (whether incurred prior to, at trial, or on appeal).  Interest continues to accrue, compounding monthly, at a rate of 10 percent *per annum*.

WHEREFORE, Nike requests that judgment be entered in favor of Nike and against First to the Finish Real Estate LLC; Kim M. Viano and Michael J. Viano doing business as First to the Finish Inc.; and Kim M. Viano and Michael J. Viano doing business as First to the Finish LLC in an amount no less than $960,565.08 plus interest, costs, collection agency fees, expenses, and reasonable attorney fees (whether incurred prior to, at trial, or on appeal).

## VIII.   COUNT V – BREACH OF CONTRACT (PERSONAL GUARANTIES OF OUTSTANDING AMOUNTS)

### Nike v. Kim M. Viano and Michael J. Viano

115.    Nike incorporates herein by reference each of the foregoing paragraphs above as if fully restated herein.

116.    The Personal Guaranties are valid, binding, and enforceable contracts.

117.    The Personal Guaranties are supported by consideration.

118.    Kim M. Viano personally guaranteed payment of the debts of Customer to Nike in exchange for Customers' continued ability to conduct business with Nike and Nike's extension of credit to Customer.

119.    Michael J. Viano personally guaranteed payment of the debts of Customer to Nike in exchange for Customers' continued ability to conduct business with Nike and Nike's extension of credit to Customer.

120.    In exchange for the Personal Guarantors' execution of the Personal Guaranties, *inter alia,* Nike agreed to do business or to continue to do business with Customer and agreed to extend credit to Customer.

121.    Nike provided goods and services to Customer and extended credit to Customer, which was Nike's substantial performance pursuant to the Personal Guaranties.

122.    Nike invoiced Customer for all amounts outstanding to Nike.

123.    Nike has resolved all discrepancies and issues raised by Customer with respect to each invoice issued to Customer by Nike.

124.    Nike has credited Customers' account for any payments received with respect to each invoice issued to Customer by Nike.

125.    The Personal Guarantors' failure to pay Nike is a breach of the Personal Guaranties.

126.    The Personal Guarantors' breach of the Personal Guaranties has caused Nike to suffer damages.

127.    Accordingly, the Personal Guarantors are required to pay Nike no less than $960,565.08 plus interest, all costs, collection agency fees, and other expenses that Nike may incur in connection with the collection of past due sums, including reasonable attorney fees (whether incurred prior to, at trial, or on appeal).

128.    Interest continues to accrue, compounding monthly, at a rate of 10 percent *per annum.*

WHEREFORE, Nike requests that judgment be entered in favor of Nike and against Kim M. Viano and Michael J. Viano in an amount no less than $960,565.08 plus interest, costs, collection agency fees, expenses, and reasonable attorney fees (whether incurred prior to, at trial, or on appeal).

## IX.    COUNT VI – BREACH OF CONTRACT (PERSONAL GUARANTIES OF NOTE AND SECURITY AGREEMENT)

Nike v. Kim M. Viano and Michael J. Viano

129.    Nike incorporates herein by reference each of the foregoing paragraphs above as if fully restated herein.

130.    Personal Guarantors have failed to pay Nike pursuant to the Note and Security Agreement.

131.    Personal Guarantors' failure to pay Nike pursuant to the Note and Security Agreement is a breach of the Personal Guaranties.

132.    Personal Guarantors' failure to pay Nike pursuant to the Note and Security Agreement has caused Nike to suffer damages.

133.    Accordingly, the Personal Guarantors are required to pay Nike no less than $960,565.08 plus interest, all costs, collection agency fees, and other expenses that Nike may incur in connection with the collection of past due sums, including reasonable attorney fees (whether incurred prior to, at trial, or on appeal).  Interest continues to accrue, compounding monthly, at a rate of 10 percent *per annum*.

WHEREFORE, Nike requests that judgment be entered in favor of Nike and against Kim M. Viano and Michael J. Viano in an amount no less than $960,565.08 plus interest, costs, collection agency fees, expenses, and reasonable attorney fees (whether incurred prior to, at trial, or on appeal).

## X.    COUNT VII – INDEMNIFICATION

Nike v. First to the Finish Real Estate LLC; Kim M. Viano and Michael J. Viano doing business as First to the Finish Inc.; Kim M. Viano and Michael J. Viano doing business as First to the Finish LLC; Kim M. Viano; and Michael J. Viano

134.    Nike incorporates herein by reference each of the foregoing paragraphs above as if fully restated herein.

135.    The Personal Guaranties require the Personal Guarantors to indemnify and hold Nike harmless from all obligations, demands, claims, and liabilities asserted against Nike and against all losses incurred or paid by Nike in any way arising out of or in connection with Nike's transactions with Customer.

136.    The Corporate Guaranties require each Customer to indemnify and hold Nike harmless from all obligations, demands, claims, and liabilities asserted against Nike and against all losses incurred or paid by Nike in any way arising out of or in connection with Nike's transactions with Customer.

137.    The Personal Guarantors are required to indemnify Nike for all obligations, demands, claims, and liabilities asserted against Nike and against all losses incurred or paid by Nike in connection with this Action, the Complaint, the Bankrupt Debtor's bankruptcy proceeding, the Note, the Security Agreement, the Forbearance Agreement, and all of Nike's business, transactions, and documentation with Customer.

138.    Customer is required to indemnify Nike for all obligations, demands, claims, and liabilities asserted against Nike and against all losses incurred or paid by Nike in connection with this Action, the Complaint, the Bankrupt Debtor's bankruptcy proceeding, the Note, the Security Agreement, the Forbearance Agreement, and all of Nike's business, transactions, and documentation with Customer.

139.    The Personal Guarantors have not indemnified Nike for all obligations, demands, claims, and liabilities asserted against Nike and against all losses incurred or paid by Nike in connection with this Action, the Complaint, the Bankrupt Debtor's bankruptcy proceeding, the Note, the Security Agreement, the Forbearance Agreement, and all of Nike's business, transactions, and documentation with Customer.

140.    Customer has not indemnified Nike for all obligations, demands, claims, and liabilities asserted against Nike and against all losses incurred or paid by Nike in connection with this Action, the Complaint, the Bankrupt Debtor's bankruptcy proceeding, the Note, the Security Agreement, the Forbearance Agreement, and all of Nike's business, transactions, and documentation with Customer.

141.    Nike has suffered damages not less than $960,565.08 for Personal Guarantor's failure to indemnify Nike.

142.    Nike has suffered damages not less than $960,565.08 for Customers' failure to indemnify Nike.

WHEREFORE, Nike requests that judgment be entered against First to the Finish Real Estate LLC; Kim M. Viano and Michael J. Viano doing business as First to the Finish Inc.; Kim M. Viano and Michael J. Viano doing business as First to the Finish LLC; Kim M. Viano; and Michael J. Viano in an amount no less than $960,565.08, in addition to all losses incurred or paid by Nike in connection with the Complaint, interest, and all of Nike's costs, collection agency fees, expenses, attorney fees, and fees of corporate counsel incurred in connection with collection efforts (including, without limitation, at trial and on appeal).

### IN THE ALTERNATIVE

### XI.    COUNT VIII - UNJUST ENRICHMENT

Nike v. First to the Finish Real Estate LLC; Kim M. Viano and Michael J. Viano doing business as First to the Finish Inc.; Kim M. Viano and Michael J. Viano doing business as First to the Finish LLC; Kim M. Viano; and Michael J. Viano

143.    Nike incorporates herein by reference each of the foregoing paragraphs above as if fully restated herein.

144.    At the request of Michael J. Viano on behalf of the Defendants, Nike conferred a benefit upon Defendants by providing the goods and services described herein.

145.    Defendants received and accepted the benefit of said goods and services provided by Nike.

146.    At all times material hereto, Defendants were aware that Nike was providing the aforesaid goods and services to Defendants and that Nike expected to be paid for such.

147.    At all times material hereto, Defendants, with the aforesaid knowledge, permitted Nike to provide said goods and services and to incur damages.

148.    At all times material hereto, Defendants were unjustly enriched by retaining the benefit of receiving said goods and services without paying Nike fair and reasonable compensation.

149.    Allowing Defendants to retain the benefit of said goods and services without paying fair compensation would be unjust.

150.    By reason of the aforesaid unjust enrichment of Defendants at Nike's expense, an implied contract exists between Nike and Defendants, and Defendants are obligated to pay Nike the *quantum meruit* value of the goods and services described herein and in the exhibits attached hereto.

WHEREFORE, Nike requests that judgment be entered against the Defendants in an amount no less than $960,565.08, in addition to all losses incurred or paid by Nike in connection with the Complaint, interest, and all of Nike's costs, collection agency fees, expenses, attorney fees, and fees of corporate counsel incurred in connection with collection efforts (including, without limitation, at trial and on appeal).

Dated: August 25, 2021                    A.M. SACCULLO LEGAL, LLC

*/s/ Mary E. Augustine*
Mary E. Augustine (Bar No. 6298218)
A.M. Saccullo Legal, LLC
27 Crimson King Drive
Bear, DE 19701
Phone: (302) 836-8877
Fax: (302) 836-8787
meg@saccullolegal.com

*Attorneys for Nike USA, Inc.*